<u>NOT FOR PUBLICATION</u>

<div style="text-align:center">

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Appellant,<br><br>v.<br><br>JOSEPH ROBINSON, JR. a/k/a "JOSEPH ROBINSON",<br><br>           Appellee. | Criminal Action No. 13-436 (JLL) |
| UNITED STATES OF AMERICA,<br><br>           Appellant,<br><br>v.<br><br>LELAND ROBINSON,<br><br>           Appellee. | Criminal Action No. 13-437 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of the United States Attorney ("Government")'s appeal of the June 17, 2013 Judgments of the Honorable Magistrate Judge Mark Falk, sentencing the Defendant-Appellees Leland and Joseph Robinson ("Leland," "Joseph," "Defendants"). For the reasons stated herein, the Court finds that Judge Falk's sentencing was not an abuse of discretion. The Court affirms the sentences.

I. **BACKGROUND**

1

On March 29, 2012, Leland, Joseph, and Rhondo Robinson[1] appeared before Magistrate Judge Falk and pleaded guilty to two counts of a four count information charging them with failing to file individual tax returns from 2005 to 2008, in violation of 26 USC §7203 and 18 USC §2. (Appellant Br. 8 (henceforth "Gov't. Br.").)

The sentencing of the Robinson brothers took place on May 23, 2013. (*Id.* at 13.) Judge Falk accepted Leland and Joseph Robinson's Presentence Investigation Report's determination that the offense level for each brother was 15. (*Id.*) The advisory Guidelines range sentences for both brothers at that level was 18 to 24 month's imprisonment and a $4,000 to $40,000 fine. (*Id.* at 10.) During the sentencing, Judge Falk heard oral arguments from the defendants and the Government. (*Id.* at 12, 16; Appellee Joseph Robinson Br. 5 (henceforth "Joseph Br."); Apellee Leland Robinson Br. 1 (henceforth "Leland Br.").) In addition, he considered dozens of letters from the Robinsons' family and friends in support of a probationary sentence, (Joseph Br. 6), and the live testimony of three people. (Gov't. Br. Joint Appendix (henceforth "J.A.") 144; 189; 190.) Judge Falk sentenced Leland and Joseph Robinson to three years of probation, three months of home confinement, and 400 hours of community service, among other fines and restrictions. (Joseph Br. 6.)

On June 17, 2013, the Government filed a timely notice of appeal, seeking to vacate the Judge's sentences as procedurally and substantively unreasonable and remand the cases for resentencing. (Gov't. Br. J.A. 17; 19.)

## II. **STATEMENT OF JURISDICTION**

Magistrate judges have the power to enter a sentence for persons convicted of misdemeanors committed within a judicial district whenever specially designated to exercise that

---

[1] Though the Government appealed the sentences of all three brothers, this court will not consider the appeal of Rhondo Robinson's sentence because he passed away before this matter was resolved. [CM/ECF No. 22.]

2

power by the district court or courts he serves. 18 U.S.C. § 3401. The district court has jurisdiction over the appeals of such sentences as if it "were to a court of appeals from a sentence imposed by a district court." 18 U.S.C. § 3742 (b), (h). Judge Falk imposed Defendant-Appellees' sentences on the June 17, 2013 and the Government timely appealed the sentences on the same day.

III. **LEGAL STANDARD**

On appeal, a defendant is not entitled to de novo review by a district judge. Fed .R. Crim. P. 58(g)(2). Rather, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* In reviewing a sentencing, a court applies the abuse-of-discretion standard, which applies to appellate review of all sentencing decisions. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009). This Court deferentially reviews the sentencing court's "application of the § 3553(a) factors to the facts of a case and must ensure only that 'the [sentencing] judge imposed the sentence that he or she did for the reasons that are logical and consistent with the factors set forth in section 3553(a).'" *United States v. Severino*, 454 F.3d 206, 210 (3d Cir. 2006) (quoting *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005); *United States v. Olfano*, 503 F.3d 240, 244 (3d Cir. 2007). "The appellant bears the burden to demonstrate that a sentence was unreasonable." *Severino*, 454 F.3d at 210.

Review of reasonableness under the abuse of discretion standard is two pronged. The reviewing court considers the sentence's procedural reasonableness first, looking to see that the sentencing court has committed no significant error by, for example, "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to

3

adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall,* 552 U.S. at 51. If the sentencing decision passes that first stage of review, the court then considers its substantive reasonableness. *Id.* If the sentencing court's "sentence is procedurally sound, [the reviewing court] will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [sentencing] court provided." *Tomko,* 562 F.3d at 568.

When looking at the Magistrate Judge's sentence, the reviewing court will be mindful that sentencing courts are to impose a sentence that is sufficient, but not greater than necessary to reflect the seriousness of the offense. 18 U.S.C. § 3553(a). The sentence should "promote respect for the law," "provide just punishment," "afford adequate deterrence to criminal conduct," protect the public against recidivism, and provide the defendant with correctional treatment. *Id.* at § 3553(a)(2). In determining how the particular sentence should be imposed, the sentencing court must consider the following factors: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission. . . ; (6) the need to avoid unwarranted sentence disparities. . . ; (7) [and] the need to provide restitution to any victims of the offense." *Id.* at § 3553(a)(1)-(7); *United States v. Jackson,* 467 F.3d 841, n. 7 (3d Cir. 2006).

Pursuant to the Supreme Court's ruling in *United States, v. Booker,* 543 U.S. 220 (2005), courts are able to exercise their discretion by considering the relevant § 3553(a) factors in imposing the defendant's sentence. *See United States. v. Gunter,* 462 F.3d 237, 247 (3d Cir.

4

2006); *see also United States. v. Fisher,* 502 F.3d 293, 307–08 (3d. Cir. 2007). In doing so, a court should provide an "explanation 'sufficient for [the reviewing court] to see that the particular circumstances of the case have been given meaningful consideration within the parameter of § 3353(a).'" *Tomko,* 562 F.3d at 567 (quoting *United States v. Levinson,* 543 F.3d 190, 196 (3d Cir. 2008)).

A court reviews the reasonableness of the sentencing court's discretion based on the record, which "must demonstrate that the [sentencing] court gave meaningful consideration to the § 3553(a) factors." *Jackson,* 467 F.3d at 841 (citing *United States v. Cooper,* 437 F.3d 324, 329 (3d Cir. 2006), *abrogated by Rita v. United States,* 551 U.S. 338 (2007)). The sentencing court does not have to "make findings as to each of the § 3553(a) factors if the record makes clear that the court took the factors into account in sentencing." *Id.* (upholding sentence because the § 3553(a) factors were adequately considered when the Judge stated before sentencing that he had considered "seven prior adult convictions" and that "these crimes involved violence").

Brevity is not an error per se, as the record as a whole may indicate that all the relevant factors were considered. *Olfano,* 503 F.3d at 245; *Jackson,* 467 F.3d at 842. Rather, the sentencing court must address the defendant's legitimate arguments and do so in a manner "that allows [a court] to review the sentence for reasonableness." *Jackson,* 467 F.3d at 842. "Merely reciting the § 3553(a) factors, saying that counsel's arguments have been considered, and then declaring a sentence, are insufficient to withstand a reasonableness review." *Id.*

If a sentencing court decides on an outside-the-Guidelines sentence, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation." *Gall,* 552 U.S. at 50. The reasons for the sentence must be adequately explained in order to allow meaningful appellate review by a higher court and "to

5

promote the perception of fair sentencing." *Id*. The thoroughness of that explanation "may turn on. . . magnitude of the variance." *United States v. Merced*, 603 F.3d 203, 216 (3d Cir. 2010). "While there is 'no mathematical formula' for assessing the adequacy of a district court's explanation for a variance, 'a major departure should be supported by a more significant justification than a minor one.'" *Id*. (citing *Levinson*, 543 F.3d at 196; *Gall*, 552 U.S. at 50).

## IV. **DISCUSSION**

In this case, the Government argues that the Magistrate Judge's sentences of Leland and Joseph Robinson should be vacated because they were both procedurally and substantively unreasonable. (Gov't. Br. 21, 37.) For the forgoing reasons, this Court finds that Judge Falk's sentencing was not an abuse of discretion and affirms the sentences.

### a. Leland and Joseph Robinson's Sentences were Procedurally Reasonable

The government argues that Leland Robinson's sentence was procedurally unreasonable because the Magistrate Judge failed to: (1) adequately respond to the government's argument in support of a Guideline sentence and (2) articulate the basis for his decision to depart significantly from the recommended Guidelines sentence. (Gov't. Br. 21.) The government also argues that both Leland and Joseph Robinson's sentences were procedurally unreasonable because the lower Court failed to adequately consider the Guidelines' policy statements or explain its policy disagreement with the Guidelines. (Gov't. Br. 22.) After a thorough review of the record, this Court finds that Leland and Joseph Robinson's sentences are procedurally reasonable.

#### i. The Court Adequately Responded to the Government's Arguments in Support of a Guideline Sentence

During Leland Robinson's sentencing hearing, the Government opposed Defendants' request for a variance based on the nature and circumstances of the offense, the Defendants' history and characteristics, and "the need for the sentence to reflect the seriousness of the

6

offense, promote respect for the law, and to provide just punishment." (Gov't. Br. 24.) In support of these arguments, the government pointed to the fact that Leland ignored his tax obligations for decades, filed returns that appeared to fraudulently understate his income, failed to file his tax returns in 2009 and 2010 even though the IRS was already investigating him for failure to file taxes, and used check cashing stores instead of banks "to deliberately conceal over $1.5 million in income from the IRS." (Gov't. Br. 24.)

Though the Court addressed these arguments only briefly, it is clear from the record that the Magistrate Judge considered all of them when sentencing Leland Robinson. Brevity is not error per se, as long as the sentencing court addresses a party's non-frivolous arguments in a manner that allows for a higher court to review the sentence for reasonableness. *Jackson,* 467 F.3d at 842.

Judge Falk addressed the Government's first argument, that Leland Robinson ignored his tax obligations for decades, by stating that it could be explained by his limited work history. (Gov't. Br. J. A. 165.) The Court acknowledged the statements made by Assistant U.S. Attorney Mack regarding the seriousness of failing to file taxes for such a long time, especially during a period of economic downturn, but found them unpersuasive because there was no proof that Leland Robinson had an obligation to pay taxes since 1985. (Gov't. Br. J. A. 165.) Still, Judge Falk ordered that a condition of Mr. Robinson's probation was for him to cooperate with the Internal Revenue Service "by filing all delinquent or amended returns no later than three months of the sentence date and . . . to file all future returns that come due during the period of supervision." (Gov't. Br. J. A. 172.) Thus, it is clear from the record that the Magistrate Court considered the argument that Leland Robinson had ignored his tax obligations for decades at the time of sentencing.

In addition, the Government argued that a downward variance was improper because Leland Robinson appeared to have fraudulently understated his income on his filed tax returns for the years 2003 and 2004, failed to file his tax returns in 2009 and 2010 even though the IRS was already investigating him for failure to file taxes during those years, and used check cashing stores instead of banks "to deliberately conceal over $1.5 million in income from the IRS." (Gov't. Br. 24.) Again, it is clear from the record that Judge Falk considered the Government's argument. Judge Falk stated at the time of sentencing that Leland Robinson was not being charged with any wrongdoing arising from the prior history discussed by AUSA Mack during his oral argument. (Gov't. Br. J. A. 165.) Though the Judge's statement on these issues is brief, it is sufficient to allow this Court to review the sentence for reasonableness and conclude that he considered the Government's arguments. *See e.g. Tomko,* 562 F.3d at 568-69 (affirming a district court's outside-the-guidelines sentence because the sentencing judge listened to the Government's comprehensive arguments in favor of a guidelines sentence, acknowledged those arguments, and sentenced the defendant almost immediately after the Government made the statements).

    ii. <u>The Magistrate Judge Properly Articulated the Basis for His Decision to Depart from the Recommended Guidelines Sentence When Sentencing Leland Robinson</u>

The Government also argues that Leland Robinson's sentence is procedurally unreasonable because Judge Falk failed to account for a "massive downward variance" in sentencing. (Gov't. Br. 27.) The Government refers to this "100% downward variance" as an "exceptional break" and "remarkable." (Gov't. Br. 27.) Though Appellant acknowledges the Magistrate Court's consideration of Leland's community service and charity work as justification for the downward variance, it argues that at no point did the sentencing Court

8

explain how "this single factor could overwhelm contrary factors and justify such a deep and exceptional variance." (*Id.* at 28)

Based on the record, the Magistrate Judge's reasoning for granting a downward variance as to Leland Robinson's sentence is clear and sufficient. If a sentencing court decides on an outside-the-Guidelines sentence, that court must consider the extent of the deviation and sufficiently explain the reasons for that deviation. *Merced*, 603 F.3d at 216. The thoroughness of the explanation may turn on the magnitude of the variance. *Id.* Here, the thoroughness of the Magistrate Judge's explanation for the chosen sentence is sufficient considering the extent of the deviation from the Guidelines' sentence.

Appellant's characterization of the Magistrate Court's deviation from the sentencing guidelines as "massive" is misleading. "[D]eviations from the Guidelines range will always appear more extreme – in percentage terms – when the range itself is low, and a sentence of probation will always be a 100% departure...." *Gall*, 552 U.S. at 47-48. In *Tomko*, the Third Circuit explained that calling a 12-month deviation in sentences "a 100 percent variance" was misleading. *Tomko*, 562 F.3d at 573. It reasoned that "quantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the substantial restriction of freedom involved in a term of supervised release or probation." *Id.* (quoting *Gall*, 552 U.S. at 48). In support, the Circuit Court pointed to several cases, including *Gall,* in which the defendant faced imprisonment for 30 to 37 months, where the reviewing court affirmed probationary sentences even though the Guidelines suggested a prison sentence of over a year. *Id*

The Court's variance in this case, as in *Tomko*, was not substantial. The lower end of the suggested Guidelines sentence for Leland Robinson was a year-and-a-half imprisonment.

9

Further, the Government's analysis of the deviation fails to take into account the fact that Robinson was sentenced to probation for 3 years, to house arrest for 3 months, and was ordered to do 400 hours of community service, among other special conditions to his probation.

Given the extent of the deviation between the Guidelines sentence and the ordered sentence, the statements made by the Magistrate Judge during Leland Robinson's sentencing adequately explained his reasons for deviating from the Guidelines. After listening to arguments by both parties, Judge Falk considered all of the § 3553(a) factors. (Gov't. Br. J. A. 161-167.) He spent a significant amount of time discussing the history and characteristics of Leland Robinson that justified the Court's sentence. (Gov't. Br. J. A. 163-165.) He stated that Leland's dedication to charity and community service stood out. (Gov't. Br. J. A. 164.) He explained that he was moved by the numerous supporting letters that he received on the Defendant's behalf because "they seemed to describe a generous and decent and charitable person." (Gov't. Br. J. A. 164.) He explained that although it is not uncommon for defendants to engage in community service, Leland Robinson's dedication to charity "is not something that was just done after the charges." (Gov't. Br. J. A. 165.)

In fact, the Judge enumerated several specific examples of the defendant's charitable contributions:

> And there are many specific examples in terms of – there was mention of Hurricane Katrina in one case, but here in Hurricane Sandy, that apparently there were charitable meals cooked and served by the defendant from the seafood restaurant, over a thousand meals is what was described, provided to first responders and to victims. There was participation at youth programs, helping local teens seeking advice, helping fill out job applications, clothing donations, participation in very much needed recreation, youth recreation. There were five years active participation in programs as a career and personal counselor. There's entrepreneurship training and transition and counseling to try to curtail any criminal actions. There was volunteer activity at the Presbyterian Center for Cardiac Care for years. There was participation in charitable work for the March of Dimes fundraising. And in one that I was particularly – I thought was

10

important, there was support from the Englewood police department, including letters of support from officers indicating that the defendant had created a midnight or helped with a midnight basketball league and worked to curtail gang activity, all of which seem to have a real, a genuine, a palpable, positive impact to Bergen County. There's also help with people with drug problems.

(Gov't. Br. J. A. 164-165.) In addition, the Court considered the defendant's "strong family values and family support" and the fact that he had no prior criminal record. (Gov't. Br. J. A. 163-164.)

Further, the Judge discussed deterrence at length. He explained that, in his experience, deterrence was the main issue in misdemeanor failure-to file tax cases "because you have limited enforcement and ability to enforce the filing of taxes, and as Judge Schwartz said, [and] according to Mr. Mack...[,] if people don't voluntarily comply with the tax code, there are serious consequences." (Gov't. Br. J. A. 166-167.) In fact, the Judge recognized that incarcerating the Defendant would have had a deterrent effect. (Gov't. Br. J. A. 167.) However, he explained that the deterrent effect "might not be as great as it may seem" in Leland Robinson's case because being forced to complete extensive community service as part of his probation sentence might make his punishment more visible to the general public. (Gov't. Br. J. A. 167.)

Finally, Judge Falk explained that a reduced sentence for Leland Robinson would not stand out "as a tremendous disparity." (Gov't. Br. J. A. 168.) He explained that he had listened to the Government's "impressive presentation" on sentences for similarly situated defendants. (Gov't. Br. J. A. 167-168.) He also explained that the Government's presentation was incomplete, and that he determined that the sentence would not cause a disparity based on his own experience as a magistrate judge and his independent research of similar cases around the

country. (Gov't. Br. J. A. 168.) This analysis, together with the rest of the Magistrate Judge's statement on the record, sufficiently explains the Court's decision to grant the variance.

### iii. The Magistrate Judge Adequately Considered the Guidelines' Policy Statement and He Did Not Sentence Either Appellee Based on His Own Personal Sentencing Policy

The Government also argues that Leland and Joseph Robinson's sentences were procedurally unreasonable because the Magistrate Judge failed to consider the Guidelines' policy statements, and instead based his sentencing decisions on his own personal sentencing policy. (Gov't. Br. 31.) This Court disagrees.

The Government's first argument, that the sentencing Court ignored the Guidelines policy at the time of sentencing, is without foundation in the record. Section 3553(a)(5)(A) requires sentencing courts to consider "any pertinent policy statement . . . issued by the Sentencing Commission...." 18 U.S.C.A. § 3553(a)(5)(A). The Guidelines state that "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines." U.S. Sentencing Guidelines Manual ch. 2, pt. T, introductory cmt. (2014). Based on Judge Falk's statements during sentencing, it is clear that he took into account the Guidelines' policy. He plainly stated during Leland Robinson's sentencing:

> And next is (B), and that's to afford adequate deterrence in criminal – in criminal conduct. And in my experience, I think this is really the issue, in the misdemeanor tax – failure-to-file tax cases that come before me. The issue really comes down to deterrence, because you have limited enforcement and ability to enforce the filing of taxes, and as Judge Schwartz said, according to Mr. Mack – and I think I had read those comments – if people don't voluntarily comply with the tax code, there are serious consequences. And this is the real issue in tax cases, and it's a very – very difficult one.

(Gov't. Br. J. A. 166-167.) The Judge then acknowledged that incarcerating the defendant would have a deterrent effect, but decided that the sentence he had chosen, which included extensive

community service, "might" serve as a better deterrent in this particular case. (Gov't. Br. J. A. 167.) The Magistrate Judge echoed this sentiment when sentencing Joseph Robinson. (Gov't. Br. J. A. 224.) Thus, the record shows that Judge Falk considered the Guidelines' policy at the time of sentencing.

The Government's second argument, that the Magistrate Judge's sentences were based on his own policy, is also without foundation in the record. The government argues that the Court ignored particular facts of the case and based its decision on the policy that "(1) non-violent misdemeanors could not be serious enough to warrant prison, and (2) probation for white-collar offenses serves as a better deterrent than prison." (Gov't. Br. 36.) Though the Court alluded to the non-violent nature of the charged crime and concluded that probation sufficiently deterred others from committing the same offense, the record shows that the Magistrate Judge did not have a fundamental disagreement with the Guidelines' policy nor did he substitute those policies with his own.

As explained above, Judge Falk acknowledged during sentencing that deterrence is the most important issue in a failure-to-file tax case. (Gov't. Br. J. A. 166-167.) In addition to this, the Judge stated that imprisonment does have a deterrent effect and that he has punished misdemeanor failure-to-file cases with both probation and incarceration. (Gov't. Br. J. A. 167-168.) With this in mind, Judge Falk concluded that probation best addressed the need for deterrence in this specific case. (Gov't. Br. J. A. 167.) This conclusion does not qualify as a disagreement in policy. Based on the record, it is clear that the Judge's sentences were based in large part on the Defendants' commitment to community service and to their families, not on a fundamental disagreement with the Guidelines' policy.

   b. <u>Leland and Joseph Robinson's Sentences were Substantively Reasonable</u>

The Government also argues that Judge Falk's sentences of Leland and Joseph Robinson should be remanded because they are substantively unreasonable. Because this Court has found that both sentences are procedurally sound, this Court must affirm them "unless no reasonable sentencing court would have imposed the same sentences" on these particular defendants for the reasons the Magistrate Court provided. *Tomko*, 562 F.3d at 568. Therefore, the sentencing judge is given "broad latitude in sentencing." *Levinson*, 543 F.3d at 195. Consequently, "[i]t will be a rare case when it is clear that no acceptable reasoning can justify a given sentence." *Id*.

The Government's challenges to the substantive reasonableness of the sentences, that the sentences "failed to address §3553(a)'s sentencing goals, were based on arbitrary policy considerations, and relied on illogical or inconsistent reasoning," are all based on the presumption that the lower Court committed a procedural error. (Gov't Br. 37.) Since this Court has found that Judge Falk committed no procedural error, it is not persuaded by these arguments.

Further, this Court finds that a reasonable court could impose the same sentence of Leland and Joseph Robinson for the same reasons the Magistrate Judge provided. As explained above, the lower Court weighed the Defendants' strong family lives, their lack of prior criminal records, and their commitment to charity and community service against the other §3553(a) factors, and concluded that a sentence of three-years probation, including three months of home confinement and 400 hours of community service, was a sufficient but not greater than necessary sentence to comply with the statutory sentencing factors. (Gov't. Br. J. A. 169; 225.) As such, this Court finds that Leland and Joseph Robinson's sentences were not substantively unreasonable.

## V. CONCLUSION

Based on the reasons set forth above, the June 17, 2013 Judgments of the Honorable Magistrate Judge Mark Falk, sentencing Defendants Leland and Joseph Robinson [CM/ECF No. 1], are affirmed.

An appropriate Order accompanies this Opinion.

Dated: ~~March~~ April 9, 2014

José L. Linares
United States District Judge